Case number 245806, United States of America v. Imari Glover, oral argument not to exceed 15 minutes per side, Ms. Bay for the appellate. Good morning. Good morning, your honors. My name is Tara Bay and I represent Mr. Glover in this case. I have asked for five minutes for rebuttal. Very well. I heard what the court just said about sticking to the most primary issue, but I do want to make a few points on the two other issues in my case, just very quickly. First, in regards to acceptance and responsibility, that relied solely on a Facebook page and an image on a Facebook page. And I believe that that finding is based on three different inferences. One, that he created that Facebook page, which I also was able to create a Facebook page under my client's name. So anyone could have created that. The government could have found the IP address very easily and determined if it came out of the jail where Mr. Glover was. Was it your client's Facebook page? It was my client's name and a photograph on a Facebook page. His name is on it. Did he deny that he created that Facebook page? Yes, your honor. Mr. Glover has always denied that he had anything to do with that Facebook page. Did he have an explanation how it occurred? Well, the person who brought the Facebook page to the government's attention was his co-defendant and his ex-girlfriend. He had pending charges against her. She had pending charges against him for an assault. Okay, so his theory is that the girlfriend is trying to retaliate against him by creating this Facebook page? Yes, your honor. Yes, your honor. And like I said, the government could have got an IP address and that could have settled that issue very quickly. Should there be a presumption that a person's Facebook page with his name on it was created by that person? And that would be a rebuttable presumption that he would have to rebut? I don't believe so, your honor. I believe that the burden is not on the defendant to prove that he did not post that image. And I rely on U.S.B. Gherkin for that. Gherkin, possibly, for that point. The other thing is the timing. Mr. Glover did not file any motions, any suppression motions. He signed a plea agreement, this Facebook page got uploaded, and then he went through with a plea hearing within a short period of time. So it doesn't make sense that Mr. Glover would agree to plead guilty and then try to intimidate a witness and then plead guilty. He didn't try to withdraw or say that he didn't want to plead anymore. It doesn't make any sense for why he would threaten a witness and then follow up quickly thereafter with his oral plea to the court. And there are other interpretations. Why do you think, so your point about the government having the burden as an original matter, that's true, but you would concede that this is a pure question of fact that's subject to clear air review on appeal? Yes, it is a clear air review. What's the best argument for why that was not enough evidence? Just the circumstances of he committed a crime, there's an accomplice, and this picture shows up on his Facebook page. Why isn't it a plausible view of the evidence, which is a very deferential standard? I just believe that it is not plausible because of the timing. So just because he had already agreed to plead guilty? He agreed to plead guilty. This Facebook page was uploaded, and then he pled guilty. If he had agreed to plead guilty, uploaded the page, and then said that he was not going to and asked for a trial, then I could see— He's trying to intimidate her because she might cooperate for sentencing, and that could increase his punishment of sentencing. Isn't that plausible? I don't think that that is—I think it's giving the actors more—I don't think that's plausible. As far as the leader organizer, it is also a clear error standard, and I understand that. But they did file a 28-J letter Monday or possibly yesterday citing the new case out of this circuit, Hawkins, which says that the court created error by relying solely on uncooperative statements by a co-conspirator who had not testified. Is that what happened here? That the sole evidence of the leadership role is the statements of the co-conspirator? Is that the situation here? Well, in respect to—if you're looking at who was—if there was a leader organizer here, who made the plan, who got the firearm, who had a greater cut of the money, those things all came solely from Ms. B. There were text messages as far as what time she was to arrive at the cash express. Text messages from the defendant, right? Yes. All right, so it's not evidence solely based on the testimony of the co-defendant. But the text messages were simply when she was to go into the cash express— Doesn't that show a leadership role? You know, I would— She is supposed to be here and do this? He's directing her, is he not? Your Honor, I would disagree with that. I would say that it's really more a matter of coordinating their efforts because her role was to hold the door open as she left for him to come in. And if she got there too early, then that would not have worked. Or if she got there too late and Mr. Glover would have been standing outside the door for any period of time, that would have also made their successfulness of the venture significantly less. Are you saying that she's the leader, then? No, I'm saying that there was no leader in this. And there doesn't have to be a leader. And whenever there's two people in indictment, you don't necessarily have to have a leader. If this was a bank robbery and a person drove the getaway car, that person is just as culpable as the person who goes into the bank with a firearm. Getting back to Judge Murphy's point, I mean, is there clear error in the assessment by the district court that he had a leadership role here? We would argue that there is, Your Honor. But I think that the reason we're here today is the definition or lack of a definition of a financial institution. And we had argued that because there is no definition in the guidelines, either in this particular section, there is a definition in the guidelines under another section that does not list check cashing places, which is what this cash express was. The definition under the statute requires some federal regulation and oversight, which this cash express does not have because they are not FDIC insured and there is no federal regulation or oversight. What is the best argument for why we should incorporate the statutory definition when the guidelines itself doesn't do that? Because we have to look at why is there a two-point enhancement here? What's the purpose of the two-point enhancement? Is it because it's more dangerous? No, because there are other enhancements that deal with whether there's a firearm, whether there was an injury, whether somebody was restrained or kidnapped or carjacking. What was the amount of loss? Is there a greater amount of loss at a cash lending place? No, because there's also a section that deals specifically with the amount of loss and there are enhancements that are added to that. So when you look at what is the reason for this two-point enhancement, I would argue that it is because the federal government would be the victim if it was a federally insured bank or credit union or if there is some federal oversight to it. So I suppose your argument is a purpose-based argument, the reason why this guideline exists. Is there a textual argument in support of the purpose argument for how the phrase financial institution could have the specialized meaning here? No, Your Honor. I didn't see anything either in the commentary or in the guideline itself. But the government would ask you to use Black's Dictionary's definition, which is basically any business that manages money or credit. And that is far too broad. That includes every Hobbs Act robbery. That includes, I use the example of DSW that uses their own credit card. I actually ran a hot dog stand when I was a teenager and I had a tackle box that I used as my cash register. But I collected cash and made change for that. Do you not think that it could be limited to an institution whose product is financial? So your hot dog, I assume. Well, I do think that it would be better if the institution's primary function had to do with lending or giving or using money in some respect or credit. If that was their primary function of the business, that would certainly be better than any business. Would that qualify as cashing? It may. It may do that. Well, why can't we just adopt that definition? I think that sounds pretty good to me. Why can't we just adopt that? Well, I would argue that in this case, that what we have as far as the statute and the other guidelines definition and the other section, 2B1.1, neither one of those includes the check cashing. And so we would argue that this was not a financial institution. Okay. You'll have your rebuttal, Ms. Bay. Good morning. Good morning, Your Honors. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. Mr. Glover's sentence should be affirmed because the district court properly applied the financial institution and role enhancements, rightly declined to apply an acceptance of responsibility reduction, and ultimately imposed a substantively reasonable sentence. Now, there are many issues in this case, and I'm happy to answer questions about any of them, but I'd like to focus my time today primarily on the financial institution enhancement and then briefly respond to a couple misstatements about the record that were made by opposing counsel concerning acceptance of responsibility. Before you move on there, can you just briefly talk about the acceptance of responsibility issue? They claim that he has refuted the argument that he posted this on the Facebook page, that he didn't do it, and that all the government has is just an inference that because it has his name on the Facebook page, he must have posted it. How do you respond to that? Well, I have a couple points of response. There was a misstatement that was made by opposing counsel when she was up here. She claims that Mr. Glover below disputed that this was his Facebook account. He absolutely did not. His argument below was that he didn't post this, but he did not dispute that it was his account. In fact, I think it's very clear if you look at page 1117 of the record. The district court explicitly asked defense counsel, are you claiming that this is not his Facebook account? And he refuses to say that. He said, no, my argument is he didn't post this, and even if he did, it couldn't be conceived of as a threat. So that's a stronger argument for the government, that this is his Facebook account, and therefore there's a strong inference that the owner or the named person of it posted this, and he hasn't rebutted it by establishing somebody else did. It's just speculation that I didn't do it, so somebody else must have done it. Absolutely, Your Honor, and that was what the district court was presented with, was speculation, and the thing that supported his speculation, he said, well, I was in prison at the time, so I couldn't have possibly posted it. But as the government pointed out, if you look at paragraph 86 in the PSR, it shows that at previous times when Mr. Glover was in prison, he actually had cell phones in prison. He actually got written up for having a cell phone in prison. So the district court, I think, reasonably looked at that and said, well, it's not implausible that he could have had a cell phone in prison. In fact, he's had a cell phone in prison before, and given that there was no evidence to suggest that somebody else actually posted this, and it wasn't implausible. It does strike me as quite irrational to think why he would post this at the time he did, when he already agreed to plead guilty. How do you respond to that point? What's the best argument there? I have two points in response to that. First, as you pointed out, he hadn't been sentenced yet, and this posting was actually very intimidating to Ms. Beam, and actually she was so fearful that she refused to testify at his sentencing, even though that would have been helpful. The other thing, though, is I think it's important to consider what is the larger context here, and you look at the context of Mr. Glover had a previous history of threatening harm to Ms. Beam if she got him in trouble with law enforcement. And he said, look, if you get me in trouble, I'm going to come after you. And the court here, what its job was to do was to assess acceptance of responsibility. It wasn't applying an obstruction of hisment. It was assessing, has this person truly accepted responsibility? And the guilty plea sometimes isn't always acceptance of responsibility. Sometimes it's acceptance of the inevitable, that the evidence is just too strong against you. And it looks like that's what was going on here. He pled guilty because he knew he couldn't beat the charge, but he was still very angry at Ms. Beam, and he wanted to threaten her and he wanted her to know that he was going to come after her because of the position she put him in. And I think that that is a reasonable inference to draw in light of the context and in light of the timing, the fact that this was posted shortly after he signed a plea agreement, when he had accepted the inevitable. And I think the district court reasonably, looking at all of this, in its judgment, said, I don't believe that Mr. Glover has accepted responsibility. And I think that's a very inherently fact-based determination, and the district court had ample reasons to reach that conclusion here. We would ask this court to affirm that finding. You say that she was going to testify at the sentencing hearing? She could have, yeah. I mean, in fact, her testimony... Was she scheduled? I mean, that's a little unusual, isn't it? To have a co-defendant testify at a defendant's sentencing? She had a cooperation agreement with the government and, in fact, received a benefit from that cooperation. So, I mean, her testimony would have been helpful to support many of the enhancements that were presented in the PSR. It's already in the pre-sentence report, isn't it? Did the government need anything else? Well, I think our position is that what was in the pre-sentence report was sufficient, but especially in light of recent decisions that say it's better to have people in court testifying. I mean, the government does prefer, if it can, to the extent there's disputed facts in the PSR, if we can have somebody come in. But anyway, that's the rationale that she may have testified at the sentencing hearing and he's trying to intimidate her to not. That's the theory, okay? I mean, but again, this isn't just about intimidation. I mean, intimidation certainly would go to obstruction. This is about whether he's accepted responsibility. Somebody who is threatening to cause some harm to somebody who got them in trouble has not truly shown remorse. They haven't shown acceptance or responsibility. And I think the district court rightly reached the conclusion that it did in finding that Mr. Glover had not fully accepted responsibility. Can you also briefly talk about the leadership enhancement and the recent supplemental authority that they've cited? I know you filed a response. Yes. Our position is that the leadership enhancement here, it's not just based on uncorroborated statement from Ms. Beam. Her statement was corroborated. It was corroborated by the text messages, which showed that Mr. Glover was directing her how to proceed on the morning of the robbery. It was also corroborated by the fact that officers, when they were talking to her, saw on her body the bruises and the marks of abuse that she described. She said she was following his instructions out of fear that he would physically harm her. And they saw evidence to corroborate that he had, in fact, physically harmed her. So I think this isn't just something where it's an uncorroborated statement. But also the leadership role enhancement was based on, if you look at the role he took during the robbery, which you can see on the video, that evidence is also there, which supports Ms. Beam's contention that it was Mr. Glover who was running the show here. He was the one who came up with the plan. He was the one who was directing her what to do. He was controlling her by threats of violence, again, corroborated by what the officers saw on her body. And we see the text messages themselves. So I think this case is a far cry from Hawkins, where you had simply an uncorroborated statement that had no evidence to support it. Here we have lots of evidence to support it. And the district court did not clearly err in relying on the evidence in the record to apply the role enhancement. I suppose there's some irony in when you look at the two arguments together, the first argument being there's a threat, so she didn't testify, and then the second argument being you're only relying on her hearsay statement. I suppose if she had actually testified, would that have obviously allowed for the leadership enhancement even without corroboration? I think so, and I think this is part of the problem of when you have people threatening co-defendants and witnesses. This is why it's so problematic to the justice system, is that then you don't have somebody willing to come in and testify in person and provide that opportunity for the court to assess their credibility in person. Turning to the financial institution enhancement, unless there are other questions on the other two, as counsel pointed out, the guideline does not define this term. So normally what we do is we- What do you do with the- it seems strange to me that it's defined two guidelines earlier for the theft provision and not for this one. What do you think the Sentencing Commission was thinking there? Do you think that's just an oversight, or is there a reason it would be expressly defined just for theft? I think the reason why it might be defined for theft is because in that guideline, the enhancement is grouped with things such as it provides an enhancement not just for theft from a financial institution, but also for large organizations that have a certain number of people. And so it may have been defined in a particular way there to match the other things that are in that enhancement in that guideline. But at bottom, the answer is we don't really know why the Sentencing Commission included a definition in this one section but didn't in another. But we do know from the Sentencing Commission from back at the beginning of the guidelines, they say explicitly definitions in one section don't necessarily apply to other sections. And so if a term isn't- and we know from background principles if a term isn't defined, we use its ordinary meaning. And our contention is that the ordinary meaning- and we agree with defense counsel here a little bit about the ordinary meaning- we think the ordinary meaning of financial institution is a business, organization, or other established entity whose primary function is to manage money, credit, or capital. And Cash Express fits squarely within that common understanding of financial institution, which makes sense. Because when you think of a financial institution, the paradigmatic example is a bank. And Cash Express and entities like it are really the banks for the unbanked. They are the entities that provide banking-like services for people who can't access traditional banks. And so it would make sense to treat Cash Express as a financial institution because it serves that function in many communities within this country. And I think that that fits squarely with the traditional understanding of financial institution when you look at Black's Law Dictionary, when you look at the definitions of financial institution that you find in all kinds of dictionaries. And it fits with the whole purpose of- to the extent that we can divine a purpose for this guideline. The guideline seems to be focused on financial institutions or post offices, which are core community institutions. And it would seem that the reason maybe why they have this enhancement is because when you rob one of those core community institutions, that can have a destabilizing effect on an entire community. So it has a sort of a larger impact than some other Hobbs Act robbery of, say, a convenience store might. How far do you think your argument goes? Because there are certainly lots of entities that maybe sell other products but maybe have subsidiary financial packages. Like if you buy furniture and you buy it on a loan or something, would that- how would you distinguish that? Would that be a financial institution? And if not, why not? We would say most likely not. Because, I mean, and this is where we think it's important to incorporate that primary function language in the definition. Because what we're thinking about with financial institutions is entities whose- that is really their business. So you're not thinking about, say, a Walmart that also happens to provide check cashing services. Walmart's primary business, their main function is to sell goods and stuff. And, yeah, they may provide some of these financial services to help people buy their goods and stuff, but that's not really their primary function. And so, I mean, we wouldn't say if you robbed a Walmart that this enhancement would apply. We think it's more focused on entities whose really- that is their primary business. Their primary function is to engage in providing money- providing credit or capital or loans. And, again, it's not anybody who deals with money. I think that counsel's hypotheticals, to the contrary, are just a little bit extreme. We're not talking about anybody who happens to have a Venmo account or anybody who deals in money. Do you think a pawn shop would care? I think a pawn shop is a little tougher, but I generally think it probably wouldn't, because I don't think the primary business of the pawn shop is necessarily providing capital. The primary business is moving goods, and they happen to provide- the way they move goods is by sort of offering things on consignment through different sort of financial setups, but I think that's not really their primary function. But I agree, a pawn shop, I think, is a tougher example, but I think under the definition we provided it probably would not count. And we would encourage the court to adopt the definition that is really the common understanding of financial institution. We're not asking this court to come up with a definition that's going to apply to everything. Okay. Anything further? Unless there are any other questions, we will rest on our briefs. All right. Ms. Bay, you have five minutes for Bob. Just a few things. First of all, as far as the acceptance of responsibility, one thing that I think is different from Mr. Glover's situation than the other cases is that this was an image of a rat or a mouse with a line through it, and could have easily- if it was Mr. Glover- It's actually with crosshairs. Right. That's a little different than a line. Well, it could have just as easily been Mr. Glover indicating he knew he was going to prison. When he signed the plea agreement, he knew that he was going to prison, and probably for a long period of time. It could have just as easily been him signaling his other people that he was not a snitch, that he was not a rat, that he was not going to cooperate with law enforcement, that he was pleading guilty, but he wasn't going to throw anybody else under the bus. And he could have done that just for his own safety, knowing that he was going to prison. Regarding the financial definition, the difference between Cash Express and these other predatory lenders and banks is not just that they are insured by the government, but they are also regulated by the government. And Cash Express, their primary goal is to make a profit by usurious rates and taking car titles, so that they can make the most money off of these transactions. And I think that that makes them separate from a bank or a credit union where there are rates that are regulated by the government, as well as the money is insured by the government. And when you consider the fact that in that enhancement, it says a financial institution or a post office, which obviously a post office is run by the government, regulated by the government, and guaranteed by the government. And so to have those two terms put together in one enhancement, I think shows that the intent was to have a government oversight, an institution that has a government regulation or oversight. Thank you. Thank you, Ms. Bate, also for taking this case pursuant to the Criminal Justice Act. We appreciate your service to your client and to the court for taking this assignment. I also want to thank counsel for traveling from Tennessee, from Knoxville, and Chattanooga. We appreciate your attendance today. Thank you. Case will be submitted.